Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2713 | **DATE** | July 20, 2000 |
| **CASE TITLE** | Tobin for Governor, et al v Ill. State Board of Elections | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]
Memorandum opinion and order entered. Accordingly, plaintiff's' motion for summary judgment is granted in part: the court finds that 10ILCS 5/10-4 is *unconstitutional*, and enters declaratory judgment so holding. Plaintiffs' motion for summary judgment is denied in part. Defendants' motion for summary judgment is denied.

(11) ☐ For further detail see order attached to the original minute order

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | JUL 2 4 2000 | |
| | Notified counsel by telephone. | | date docketed | 30 |
| | Docketing to mail notices. | | SB docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TOBIN FOR GOVERNOR, JEAN L. BAKER, )
RAYMOND A. DUBIEL, JAMES J. MORRIS )
and ROBERT S. REDFERN, )
)
Plaintiffs, )
)
v. ) No. 99 C 2713
)
) Judge Robert W. Gettleman
)
THE ILLINOIS STATE BOARD OF ELECTIONS,)
and its members, individually and in their official )
capacities, HANNELORE HUISMAN, KENNETH )
CHARLES J. DURHAM, WILLIAM )
MCGUFFAGE, DAVID E. MURRAY, PHILIP )
O'CONNOR, WANDA REDNOUR, and ELAINE )
ROUPAS, )
)
Defendants )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Tobin for Governor, Jean L. Baker, Raymond A. Dubiel, James J. Morris, and Robert S. Redfern have filed a six count complaint against defendants The Illinois State Board of Elections ("the Board") and its members, individually and in their official capacities, alleging that defendants violated plaintiffs' constitutional right to vote and associate when they refused to certify a slate of candidates for all state-wide offices offered by the Libertarian Party on the General Election Ballot in November 1998. Previously, the court granted the Board's motion to dismiss based on the Eleventh Amendment, and the individual defendants' motion to dismiss all claims for monetary relief and to void the Board's decision, leaving only plaintiffs' claims: (a) for declaratory relief that the Board's decision violated their constitutional rights; (b) that 10 ILCS 5/10-4 is unconstitutional to the extent that it requires petition circulators to be registered

voters; and (c) that the Board be required to give public notices and individual notice where possible to signers of petitions that are challenged pursuant to the Election Code. Plaintiffs have filed a motion for summary judgment, seeking a declaration that: 1) Illinois statute 10 ILCS 5/10-4, requiring petition circulators to be registered voters in Illinois, is unconstitutional, pursuant to the First and Fourteenth Amendments of the United States Constitution; and 2) the Illinois Election Code unconstitutionally deprives petition-signers and voters of notice of objections lodged against candidate petitions and the Illinois Board of Elections should be required to give timely public notice to the filing of a candidate petition objection.

Defendants, members of the Illinois State Board of Elections in their individual capacity, filed a cross motion for summary judgment arguing that: 1) plaintiff "Tobin for Governor" lacks standing to sue because it is not a real party in interest; 2) Tobin for Governor is barred by res judicata and collateral estoppel from raising issues that could have been raised by James Tobin in the state court action, because Tobin for Governor is in privity with James Tobin; 3) all the plaintiffs lack standing to sue because they suffered no injury fairly traceable to the alleged constitutional violation and no case or controversy exists; 4) Illinois law requiring petition circulators be registered voters is constitutional; and 5) no constitutional requirement exists for petition signers to receive notice when their signatures are challenged.

## FACTS

Plaintiff Tobin for Governor is a political committee formed in 1998 for the purpose of electing James Tobin as governor of the State of Illinois. The Libertarian Party of Illinois ("LPI") sought ballot access to form a new statewide political party by filing petition papers with their slate of candidates, pursuant to ILCS 5/10-2, for the November 3, 1998, general election.

Two individuals, Anthony P. Libri, Jr., and Drinda O'Connor, filed objections to the nomination petitions of all seven of the proposed LPI candidates with the Illinois State Board of Elections on August 10, 1998, and public hearings on the objections began on August 17, 1998. On October 12, 1998, the Hearing Officer issued a report sustaining objections to over thirty thousand of the 60,638 total petition signatures for a variety of reasons, including petition circulators who were not registered voters, pursuant to ILCS 5/10-4. Even after the LPI's loss of signatures, the Hearing Officer retained 26,610 signatures and declared LPI's nomination papers legally sufficient to put LPI's candidates on the ballot. On October 13, 1998, however, defendant Illinois Board of Elections struck an additional 4,285 signatures from the LPI's nomination petition. Striking these additional signatures rendered LPI's petition legally insufficient to be certified for the 1998 general election, and the candidates were not placed on the election ballot.

The LPI candidates filed a petition for judicial review in the Circuit Court of Cook County to reverse the Board's decision to keep the them off the election ballot. The Circuit Court dismissed the petition for a lack of subject matter jurisdiction, failure to join a necessary party, and failure of the candidates to serve the objectors with a copy of their petition for judicial review within ten days as required by law. The candidates appealed the dismissal, but the appellate court affirmed the lower court's decision.

## DISCUSSION

I. Res Judicata

Illinois law of res judicata provides that "a final judgment on the merits rendered by a court of competent jurisdiction bars the same parties or privies from relitigating matters that were raised or could have been raised in the prior action." LaSalle National Bank of Chicago v.

3

County of DuPage, 856 F.2d 925, 930 (7th Cir. 1988). "The essential elements of res judicata are[:] (1) an identity of parties or their privies; (2) an identity of causes of actions in the earlier and in the later suit; and (3) a final judgment on the merits in the earlier suit." Id. at 931. The Full Faith and Credit statute requires that a federal court to apply the same rules of issue and claim preclusion to a state court judgment as do state courts. 28 U.S.C. § 1738.

Defendants argue that Tobin for Governor should be barred because it is in privity with James Tobin, who was a party to the state court action and against whom the State Board of Elections issued a final judgment on the merits. According to defendants, James Tobin's failure to raise the constitutional issues at the state court level bars Tobin for Governor from raising this claim at the federal level because "the conclusiveness of the judgment in such case [the prior action] extends not only to matters actually determined, but also to other matters which could properly have been raised and determined therein. This rule applies to every question relevant to and falling within the purview of the original action..." LaSalle National Bank of Chicago v. County of DuPage, 856 F.2d at 932 (quoting Hughey v. Industrial Commission, 76 Ill.2d 577, 582 (1979)).

Defendants cite Button v. Harden, 814 F.2d 382 (7th Cir. 1987), to support their claim that plaintiffs' First Amendment issues could have been raised at the circuit court level. Id. at 384. In Button, a school teacher was fired, the teacher was not reinstated at an administrative hearing, and the teacher then appealed the hearing officer's decision to an Illinois circuit court, which affirmed the teacher's dismissal. Id. at 382. The teacher then filed a lawsuit in the Central District of Illinois, pursuant to 42 U.S.C. § 1983, claiming that he was "fired in retaliation for exercising his First Amendment right of free speech." Id. The Seventh Circuit affirmed the

4

district court's dismissal of the teacher's lawsuit based on res judicata, stating that the teacher could have raised the First Amendment issue in the state court. Id. at 384. The federal suit is "barred by the judgment in the administrative review proceeding--provided he could have raised his First Amendment ground in that proceeding. The reviewing court's judgment is res judicata to all issues... which could have been raised on the record but were not..." Id. (quoting Edwards v. City of Quincy 124 Ill.App.3d 1004, 1012 (1984)).

Defendants' argument fails, however, because even if Tobin for Governor was in privity with Tobin, James Tobin could not have raised First Amendment issues at the electoral board hearing. Phelan v. County Officers Electoral Board, 240 Ill.App.3d 368, 373, 608 N.E.2d 215, 217, 181 Ill.Dec.142, 144 (1st Dist. 1992) ("An electoral board is without authority to decide constitutional issues"), rev'd on other grounds Bonaguro v. County Officers Electoral Board, 158 Ill.2d 391, 634 N.E.2d 712, 199 Ill.Dec. 659 (1994). See Wiseman v. Elward, 5 Ill.App.3d 249, 257, 283 N.E.2d 282, 289 (1st Dist. 1972) ("... our legislature did not intend the Electoral Board to entertain constitutional challenges to procedures employed in obtaining signatures for primary nominating petitions."). While defendants are correct that James Tobin could have raised the First Amendment issue in the state circuit court, the state court dismissed the case for a lack of subject matter jurisdiction before he was able to raise the issue. Button v. Harden, 814 F.2d at 384. Illinois law provides that a dismissal for a lack of jurisdiction does not operate as an adjudication on the merits. Illinois Supreme Court Rule 273. Tobin for Governor cannot be precluded from bringing the present constitutional claims that James Tobin was unable to advance at the Electoral Board's administrative hearing or at the state circuit court. Therefore, Tobin for Governor is not barred by res judicata from bringing this action.

II. Standing

The constitutional minimum of standing, "an essential and unchanging part of the case-or-controversy requirement of Article III," contains three elements: (1) "the plaintiff must have suffered an... invasion of a legally protected interest which is concrete and particularized and actual or imminent...;" (2) "...a causal connection between the injury and the conduct complained of" must exist and be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" and (3) "it must be likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Defendants claim that all plaintiffs lack standing because no "constitutional violation" is "fairly traceable to the challenged requirement of 10 ILCS 5/10-4" and that the four petition signer plaintiffs are unable to "assert their rights" because neither James Tobin nor the LPI are parties to this lawsuit. Additionally, defendant argues that "the alleged constitutional violation had no impact on the candidate's ballot access" because the number of signatures stricken from the petitions due to unregistered circulators was insignificant.

Although defendants assert that Tobin for Governor lacks standing, its status as a political committee is similar to American Constitutional Law Foundation, Inc., ("ACLF") a nonprofit, public interest organization supporting "direct democracy," and one of the plaintiffs in Buckley v. American Constitutional Law Foundation, Inc., 525 U.S. 182, 188 (1999). Just as in Buckley, where the district court found that ACLF and the other plaintiffs had "shown sufficient commitment to continuing efforts to address the Colorado electorate through petitions... to establish standing to bring this action...," Tobin for Governor also has demonstrated its

6

commitment to placing its candidates on the General Election Ballot through its petition signature efforts. American Constitutional Law Foundation, Inc. v. Meyer, 870 F.Supp. 995, 997 (D. Colo. 1994). Therefore, Tobin for Governor has standing to raise the constitutional issues in the present case.

As to the remaining four individual plaintiffs, the court has already held that plaintiffs have standing to assert their claim "that the statutory scheme followed by the Board deprived them of their right to associate and vote for the candidate of their choice." Tobin for Governor v. The Illinois State Bd. of Elections, No. 99 C 2713, slip op. at 7 (N.D. Ill. Dec. 7, 1999).

III. Constitutional Claims

Plaintiffs first ask the court for a final judgment declaring 10 ILCS 5/10-4 unconstitutional, pursuant to the First and Fourteenth Amendments of the United States Constitution. Illinois law requires that a nomination petition circulator for candidates running for public office in Illinois must "add a statement, signed by a registered voter... certifying that the signatures on that sheet of the petition were signed in his presence." 10 ILCS 5/10-4. Defendant argues that the statute is constitutional.

As plaintiffs correctly indicate in their motion for summary judgment, the issue in the present case is similar to the issue confronted in Buckley. Of the several plaintiffs in Buckley, a number "of individual participants in Colorado's initiative process" filed a complaint in the United States District Court for the District of Colorado, pursuant to 42 U.S.C. § 1983, challenging "six of Colorado's many controls on the initiative-petition process," including a Colorado statute requiring ballot initiative petition circulators to be registered voters in Colorado. Buckley v. ACLF, Inc., 525 U.S. at 187. The Court ruled that Colorado's "restrictions...

significantly inhibit communication with voters about proposed political change, and are not warranted by the state interests (administrative efficiency, fraud detection, informing voters) alleged to justify those restrictions." Id. at 192. The Court reasoned that by requiring circulators to be registered rather than simply voter eligible, the number of potential circulators and the audience that the circulators can reach is limited. Id. at 193-194. Additionally, and relevant to the facts of the present case, the Court stated that "initiative petition circulators also resemble candidate-petition signature gatherers... for both seek ballot access." Id. at 191.

In the present case, plaintiffs contend that while the Buckley Court found 964,000 Colorado unregistered eligible voters a number significantly large enough "to limit the number of voices who will convey" the message, Illinois has over three million unregistered eligible voters. Id. at 193; Plaintiffs' LR 56.1 Statement of Material Facts "Exhibit K." The number of unregistered eligible Illinois voters similarly limits the potential pool of individuals from which a political party can obtain volunteers to circulate nominating petitions for candidates to be placed on the election ballot. Defendants mistakenly characterize plaintiffs' claim as one that may lead to a lack of order on the election ballot and that "regulatory requirements imposing some barriers to ballot access are not inevitably unconstitutional." Plaintiffs are not asking the court to remove all barriers to election ballot access; rather they are asking this court to follow the Buckley reasoning that "petition circulation... is 'core political speech'" which the voter registration requirement limits. Id. at 186 (quoting Meyer v. Grant, 486 U.S. 414 (1988)).

Defendants further contend that given the "widespread" amount of "fraud" that occurred with the petition circulators causing over "30,000 signatures" to be invalidated, the registered voter requirement prevents the potential for even more corruption. However, concern for the

8

potential of non-Illinois residents circulating petitions may be alleviated by the fact that petition circulators must state their address on the affidavits filed with the nominating petition, just as the Colorado circulators in <u>Buckley</u> also had to submit an affidavit with their street address. <u>Id.</u> at 196. See <u>Lucas v. Lakin</u> 175 Ill.2d 166 (1997).

Accordingly, the Supreme Court's decision in <u>Buckley</u> compels the conclusion, and this court so holds, that 10 ILCS 5/10-4 is unconstitutional.[1]

Plaintiffs' second issue in their motion for summary judgment asks the court to find that the Board of Elections "has a duty at least to provide timely public notice that an objection to the petition has been lodged and that hearings on the objection will be held" to those petition signers that are registered voters. Plaintiffs assert that third-party candidates have a "constitutionally protected interest in assuring that the Election Code treats third-party candidates fairly." Defendants contend in their cross motion for summary judgment that plaintiffs offer no cases "directly" in support of their desire for public notice of a hearing.

The Supreme Court has held that "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." <u>Burdick v. Takushi</u>, 504 U.S. 428, 434 (1992) (quoting <u>Anderson v. Celebrezze</u>, 460 U.S. 780 (1983)). For obvious reasons, plaintiffs have failed to cite any authority which holds that an election board must attempt to give actual notice of a hearing to all individuals that

---

[1] In <u>Krislov v. Rednour</u>, 1999 WL 1794035 (N.D. Ill.), Judge Bucklo held that Illinois law requiring candidate circulators to be registered voters was in violation of the United States Constitution. Judge Bucklo stayed enforcement of the order, and the case is currently pending in the Seventh Circuit.

have signed a nominating petition. In its current form, the Illinois statute requires notice to be given to the candidate within 24 hours after receiving the nomination papers and the objector's petitions. 10 ILCS 5/10-10. Requiring the Board to give actual notice to every signer who has been stricken from the nominating petition would be unmanageable. The cost and difficulty of notifying potentially thousands of individuals as to the date, time, and place of the hearing would make successful administration of the task almost impossible. Moreover, it is uncertain what effect the petition signers would have at an Election Board hearing because, as plaintiffs admit, the "Illinois Election Code does not provide a mechanism for the public to participate in election disputes."[2] Therefore, plaintiffs request for timely notice of an Election Board hearing is denied.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion for summary judgment is granted in part: the court finds that 10 ILCS 5/10-4 is unconstitutional, and hereby enters declaratory judgment so holding. Plaintiff's motion for summary judgment is denied in part: the court holds that the Election Board is not required to give actual notice to petition signers. Defendants' motion for summary judgment is denied.

**ENTER:** July 20, 2000

**Robert W. Gettleman**
**United States District Judge**

---

[2]Defendants' recognition that individual signers have no "standing" to participate in the matter before the Board demonstrates the necessity of this court's earlier holding that the individual plaintiffs have standing to challenge the constitutionality of the election code in the instant case.